## S01A0487. PERKINSON v. THE STATE.
### (546 SE2d 501)

HINES, Justice.

A jury found Cicero Santana Perkinson guilty of felony murder, aggravated assault, false imprisonment, theft by taking, and possession of a firearm during the commission of a crime in connection with a car hijacking which resulted in the death of Louis Nava and the wounding of Dakarai Sloley. Perkinson challenges his convictions on the sole basis that the evidence was insufficient to support them. Finding the evidence sufficient to support Perkinson's convictions, we affirm.[1]

---

[1] The crimes occurred on June 6, 1998. On August 7, 1998, a Bartow County grand jury indicted Cicero Santana Perkinson, along with Eric Perkinson, Walter Jerome Perkinson, and Riorechos Wilson, for malice murder (the fatal shooting of Louis Nava); three counts of felony murder (the underlying felonies being the kidnappings with bodily injury of Louis Nava and Dakarai Sloley, the armed robberies of Nava and Sloley, and the hijacking of a motor vehicle); aggravated battery; two counts of aggravated assault; two counts of false imprisonment; theft by taking a motor vehicle; and possession of a firearm during the commission of a crime. Perkinson was tried before a jury January 3-12, 2000. He was found guilty of the three counts of felony murder, the aggravated assault of Sloley, the two counts of false imprisonment, theft by taking, and possession of a firearm during the commission of a crime. The court did not permit the jury to separately consider and return a verdict on the aggravated assault charge involving Nava. The jury was unable to reach a verdict, with regard to Perkinson, on either the malice murder or aggravated battery charges, and a mistrial was declared on those counts. On January 25, 2000, Perkinson was sentenced to life imprisonment for felony murder while in the commission of the hijacking of a motor vehicle, twenty years incarceration for aggravated assault, ten years incarceration for each count of false imprisonment, ten years incarceration for theft by taking, and five years incarceration for possession of a firearm during commission of a crime; each count was to be served consecutively to the preceding count for a total of life plus 55 years. The remaining felony murder counts were considered merged for the purpose of sentencing. Perkinson filed a motion for new trial on February 24, 2000, and the motion was denied on October 13, 2000. A notice of appeal was filed on November 13, 2000, and the case was docketed in this Court on Decem-

Perkinson contends that the State failed to show that he intended to or did participate in the crimes, that he was merely present, and therefore, could not be convicted as a party to the crimes. He urges that at most his involvement was as an accessory after the fact. However, the State's evidence demonstrated that that was far from the case.

The evidence construed in favor of the verdicts showed that about noon on June 6, 1998, Perkinson, his brothers, Eric Perkinson ("Eric") and Walter Jerome Perkinson ("Jerome"), and Riorechos Wilson ("Rico") were at the Perkinson home. The group planned to journey to a flea market in Stone Mountain. Before leaving in Perkinson's Toyota, the men discussed stealing a vehicle. They discussed, "if we run up on a car while there that was a BMW, you know, and we had a chance to get it, we'll get it." It was "something that was agreed to." There had been earlier talk about taking a BMW; Perkinson, Eric, and Rico had discussed "a BMW possibly coming up." The men also discussed "getting money." The day before, Perkinson and Rico had talked about "hijacking a car if one came available." In fact, they had acquired a .9 millimeter pistol for that purpose. The four men left in Perkinson's Toyota with Perkinson driving. They took the pistol with them.

After leaving the flea market, Perkinson and the others went to eat and shop at a strip mall; Perkinson was still driving the Toyota. As the men were exiting the parking lot at about 6:00 p.m., they spied a white BMW; the BMW was driven by Dakarai Sloley, and Louis Nava was in the front passenger seat. The teenage friends, Sloley and Nava, had borrowed the BMW from Sloley's aunt in order to pick up Sloley's dog from a pet store. Upon seeing the BMW and Nava and Sloley in it, Perkinson commented, "two suckers." After Nava and Sloley went into the store, Perkinson pulled up to the BMW and then parked in a space behind it. The men observed Nava and Sloley leaving the store, and Eric stated "there they go." As Nava and Sloley got into the BMW, Eric and Rico climbed into the back seat behind them. Eric had the pistol and told Sloley, who was in the driver's seat, to follow the Toyota, which was still being driven by Perkinson. Eric and Rico then took money from Nava and Sloley.

Sloley was directed to pull into a church parking lot, and was warned, "Don't run or we'll shoot you." Perkinson parked the Toyota a few spots down from the BMW. Eric ordered Nava into the trunk of the BMW, and took the keys from Sloley. Rico told Sloley to slide over into the front passenger's seat, which he did. Rico then took over driving the BMW, and Eric got into the back seat. Rico drove to the

ber 18, 2000. The appeal was submitted for decision on February 12, 2001.

interstate, with Perkinson and Jerome following in the Toyota. Eric made Sloley give him a pair of black gloves that Sloley had been wearing. On the interstate, the BMW and the Toyota were "passing each other" or "racing."

The cars exited onto Paga Mine Road; Rico stopped the BMW and Perkinson parked the Toyota about a car length behind. The Perkinson brothers were familiar with this area. In fact, Perkinson and Rico had been there a couple of weeks before.

Eric took Nava out of the trunk, told him to take off his shirt and shoes, and put the pistol to his head. Nava was walked "up in the bushes." Rico strode to the Toyota, and Perkinson rolled down the window, and said, "what's up." Rico replied, "he done freaked out." Then Perkinson asked, "what is the dude doing – the black dude," referring to Sloley. Rico walked back to the BMW to resume guard over Sloley.

Once in the bushes, Eric fired at Nava. Nava was shot twice and died from a wound to the head. After Nava was shot, Eric returned to the BMW. Sloley was ordered out of the BMW, and Eric put the pistol to Sloley's head. Perkinson watched as Sloley was made to walk past him and up into the bushes as had been Nava.

When Sloley got to where Nava was lying, he started to run. Several shots were fired at him, shattering the bone in Sloley's arm. Sloley hid in the woods until he heard both cars leave at about the same time. Perkinson and the others went back to the Perkinson home. At about 8:00 p.m., a man observed a car looking like the Toyota, with at least three people in it, and a fire nearby. He called the police, and put the fire out. Among the ashes were identifying papers from the BMW.

That night, Perkinson, Eric, Jerome, and Rico traveled to Rome to a party. They took both the Toyota and BMW and swapped vehicles at times. Perkinson was seen driving the BMW later that night, and the BMW was also at a motel in Rome, where Perkinson was seen.

The BMW was recovered at the home of Eric's girlfriend. Perkinson and Rico had driven it there, and Perkinson's fingerprints were found on the car. The murder weapon was recovered from the floorboard of the BMW.

A person who commits a felony may be convicted of felony murder for a homicide that results during the commission of that felony, without regard to whether the person intended to kill the victim or directly acted to commit the murder. *Lark v. State*, 263 Ga. 573, 574 (2) (436 SE2d 1) (1993). What is more,

> [u]nder OCGA § 16-2-20, one is a party to a crime if he intentionally aids or abets the commission of the crime, or advises, encourages, hires, counsels, or procures another to

commit it. Whether a person is a party to a crime may be inferred from that person's presence, companionship, and conduct before and after the crime was committed. [Cit.]

*Parks v. State*, 272 Ga. 353, 354 (529 SE2d 127) (2000).

Here, the evidence authorized the jury to find that Perkinson was a willing participant in the hijacking of the BMW and the other felonies resulting in Nava's murder and the attack on Sloley. Contrary to his assertions, he was not merely present at the scene of the crimes, and assisted after the fact. Rather, he was part of the plan to steal a BMW, identified the ultimate victims and vehicle, actively aided in procuring the BMW and in abducting the victims, and enjoyed the fruits of the crimes. The evidence was sufficient to enable a rational trier of fact to find Perkinson guilty beyond a reasonable doubt of the crimes for which he was found guilty. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgments affirmed. All the Justices concur, except Benham, C. J., not participating.*

DECIDED MAY 7, 2001.

*Kelley A. Dial*, for appellant.

*T. Joseph Campbell*, District Attorney, *Thurbert E. Baker*, Attorney General, *Paula K. Smith*, Senior Assistant Attorney General, *Daniel G. Ashburn*, Assistant Attorney General, for appellee.